EDWIN S. TARR AND WM. H. BLASS
vs.
JOHN H. WILLIAMS
AND ANTOINETTE, HIS WIFE.
} DECEMBER TERM, 1853.

[CONTRACT OF FEME COVERT HAVING SEPARATE ESTATE.]

A MARRIED woman has no power over her separate estate but what is specially given, and to be exercised only in the mode prescribed, if the mode be prescribed.

[The marriage settlement referred to in the opinion of the Chancellor in this case, after reciting the intended marriage

between Antoinette McFadon and John H. Williams, conveys all the estate of the former, real, personal and mixed, to a trustee, *in trust* for the said Antoinette McFadon, her heirs, executors, administrators and assigns, until the said intended marriage shall be had and solemnized, and from and immediately after the solemnization thereof; *in trust*, to suffer and permit the said Antoinette McFadon, for and during the term of her natural life, to hold, use, occupy and enjoy the lands, estate and property hereby conveyed, and the rents, issues, profits and increase thereof, to receive and take, and the same to apply to her own sole and separate use, free from the power, disposal or control of the said John H. Williams, or any future husband of the said Antoinette, and without being in any manner liable or bound for, or by, his or their debts, contracts or engagements, for which rents, issues and profits and increase, the receipt of the said Antoinette alone, whether she be sole or covert, shall be a good and effectual acquittance and discharge; with power, nevertheless, to the said Antoinette at any time, her coverture notwithstanding, or whether sole or covert, to sell, dispose of and convey, absolutely, for such price or consideration as she may consider right, the whole or any part or parts of the trust estate hereby conveyed and assigned, and the proceeds of any sale to be made in the premises, by virtue of such power, to reinvest in such other lands, estate or property as she may think best, which reinvestment is to be considered and deemed in all respects in regard to the uses and trusts relating thereto, as the original property for which they may be substituted, with power also to the said Antoinette to make, execute, acknowledge and deliver any lease or leases of any part of the said trust estate, for any term or terms of years, renewable or not renewable, reserving the rent or rents, to be payable thereout for the same uses and purposes herein set forth as to the specific estate hereby conveyed. And from and after the decease of the said Antoinette McFadon, then *in trust*, to suffer and permit the said John H. Williams, in case he shall survive the said Antoinette, to hold, use, occupy and enjoy the lands, estate, effects and property aforesaid, and to receive the rents, issues

VOL. IV—6

and increase thereof, for and during the term of his natural life, and from and after his death, *in trust* for such person or persons, and for such uses and purposes as she, the said Antoinette, shall by her last will and testament, or by any instrument of writing in the nature of, or purporting to be, her last will and testament direct, limit or appoint, and in case of no such direction, limitation or appointment, then *in trust* for all and every the children or child which the said Antoinette may have by the said J. H. Williams, their heirs, executors, administrators and assigns for ever, to take *per stripes*, and not *per capita*. But in the event of the death of the said Antoinette without leaving a child or children, or a descendant or descendants thereof, by the said J. H. Williams, living at the time of her decease, then *in trust* for such person or persons as would, by the now existing laws of the State of Maryland, be the heirs of the said Antoinette to take an estate in fee simple in lands by descent from her, and to, for or upon no other use, trust, intent or purpose whatsoever."

The other facts in the case are fully stated in the opinion of the Chancellor, delivered on the 16th of February, 1854.]

THE CHANCELLOR:

The object of the bill in this case is to charge the separate estate of Mrs. Williams, formerly Miss McFadon, with the payment of a bill for household furniture, amounting to upwards of five hundred and fifty dollars, for which, as the complainants allege, the defendants, Williams and wife, gave orders, and which was delivered to them, and is now in their use and possession, promising to pay therefor out of the separate estate of the wife. And it is further charged, that a portion of her real estate being about to be sold, she and her said husband, on the 26th of May, 1845, gave an order to the attorney, who had been employed by her to effect the sale, to pay said bill.

The order is in the following terms: "Walter Farnandis, Esq., will please pay to Messrs. Tarr & Blass, the amount of their claim out of the first proceeds of the sale of the real estate belonging to us, to be made under the proceedings now in pro-

gress for the division or sale of the real estate of John McFadon, deceased." This order was signed by Williams and wife, and constitutes, as the complainants insist, an equitable mortgage on the property then intended to be sold, and forasmuch as the proceedings for the sale then in progress have been discontinued by direction of Mrs. Williams, they pray that said property may be sold by a decree of this court, and their claim paid out of the proceeds, and for general relief.

The defendants, Williams and wife, in their answer, whilst they admit that the furniture in question was purchased by the husband, expressly deny, "that the wife had any part in the making of said purchase, or had, in fact, any knowledge of the same, until after it was made, or that they, or either of them, did make to the said complainants any such statements and representations as are charged in the bill, or did obtain the credit or the purchase, or any part thereof, on the faith of such statements and representations." "But on the contrary, they aver that the furniture was sold and delivered by the complainants to the husband on his individual credit, was charged to him and the account therefor rendered to him alone, and that complainants received his individual promissory note therefor."

The answer admits that proceedings were contemplated at one time to sell certain property, a portion of the separate estate of the wife, and in the expectation that it would be sold, and the proportion coming to her would be more than sufficient to pay the complainants' claim. She, upon the application of her husband and of the complainants, did consent that it should be so paid, and did sign the order referred to in the bill. But that it was subsequently agreed that said property should not be sold, and that she has since exchanged her interest therein for another piece of property owned by one of her co-heirs. That she only intended that complainants' claim should be paid in the event of a sale of the property and her share of the proceeds thereof paid to her.

She denies that the furniture, or any part thereof, ever came into her separate possession and control, and avers, that long before the filing of the bill, (which was on the 5th of March,

1846,) a part thereof was taken and sold under an execution for the individual debts of her husband, and that the residue has been disposed of by him in payment of his individual debts, and she insists that inasmuch as the order on the attorney was given for the individual debt of her husband, and without consideration being received by her, she is not bound by it.

It appears, by an exhibit returned with one of the commissions, that the bill for this furniture was rendered against John H. Williams alone, and it is in evidence, from the letters of the complainants, returned under the same commission, that he gave his individual note for the money, which the complainants procured to be discounted at one of the banks in Baltimore. And in the whole series of letters from the complainants to the said Williams, from November, 1844, to February, 1845, nothing is to be found indicating an impression on the part of the complainants that Mrs. Williams was responsible to them for their claim.

Not only in the letters, between these dates, is there nothing from which it can be inferred that the complainants trusted Mrs. Williams, or looked to her separate estate for satisfaction, but it is manifest from their letters to Williams, of the 8th of March, 1845, that the credit was given to him, upon the faith of representations which he had made to them with regard to his property. That letter is in these terms:

"BALTIMORE, *5th March*, 1845.

To J. H. WILLIAMS,

*Sir*—In reply to your letter, dated the 28th of February, I have to state, that if you do not forthwith pay your note, now due to Tarr & Blass, I will commence a criminal prosecution against you for swindling. You will well recollect that you came to our warerooms, and represented yourself to be the owner of a fine farm in Harford county, which you had recently purchased, and for which you had paid $16,000, and that you had ample means to pay for all your purchases. It was under these representations of yours to me, that you obtained such credits. I shall wait four days, (until next Monday,) for your reply to this, after which period, in the absence of some satisfactory

settlement, I will surely proceed against you as above, and also in Chancery against your wife, as you represent her to have a separate estate.         Signed,

EDWIN S. TARR, *for Tarr & Blass.*"

Nothing in my judgment, could be more conclusive than this letter against the ground now taken by the plaintiff, that this furniture was sold upon the credit of Mrs. Williams' separate estate, and upon an engagement that it should be paid out of it. On the contrary, the threat to proceed in Chancery against the wife is founded upon information derived from the husband that his wife had a separate estate, which did not otherwise appear to be known to the complainants. The letter states distinctly, that the credit was given to the husband upon representations made by him in reference to his own property, and for which they (the representations) being, I presume, ascertained to be false, he threatens him with a criminal prosecution. Unquestionably this is not the language these plaintiffs would have employed if the goods had been sold upon the credit of the separate estate of the wife as is now urged.

I feel, therefore, a strong conviction, that the account which the answer gives of this transaction is the true one, notwithstanding the proof of Elijah Walton, returned under one of the commissions. He is the only witness who says any thing in opposition to the answer, and he is not only not supported by corroborating circumstances, but the circumstance renders the truth of this answer almost, if not entirely, absolutely certain.

Being of opinion, then, that I may place the decree about to be pronounced, dismissing the bill upon the ground that its allegations are not merely unsupported by proof, but disproved by the pleadings and evidence, I am relieved from the necessity of considering the effect of the marriage settlement of the 11th of June, 1844.

But looking at the trusts of that instrument, it might, perhaps, be doubted whether Mrs. Williams had the power to charge the *capital* of her separate estate with the payment of the claim of the complainants. She has, no doubt, the power to receive and apply, at her pleasure, the rents, issues and profits thereof.

6*

And she has the further power to sell and convey the trust property itself, and to reinvest the proceeds of sale of the estate itself in such other property as she might think best, the property thus purchased, being subject to the trusts of the property sold, but whether she could charge the trust estate with her husband's debts, or apply the principal in the purchase of property which would be consumed in the use, may be a question of some difficulty. If she could, it is clear the rights of those in remainder might be wholly defeated.

The conclusion at which I arrived, in considering this subject upon a former occasion, and which I regarded as the American doctrine, as established by the case of *The Methodist Church* vs. *Jacques*, 3 *Johns., Ch. Rep.*, 78, and *Thomas* vs. *Folwell*, 2 *Wharton*, 11, was "that a married woman has no power over her separate estate, but what is specially given, and to be exercised only in the mode prescribed, if the mode be prescribed." This doctrine is vindicated by Chief Justice Gibson in the case in *Wharton* with great ability, and upon reference to the *Law Library*, vol. 65, page 370, *et seq.*, will be found to be the firmly settled conclusion of the American cases.

But the bill in this case will be dismissed upon the grounds first stated, without deciding or intending to decide that the rule above adverted to applies to this deed.

DOBBIN and TALBOTT, for the Complainants.

J. M. S. CAUSIN and W. FARNANDIS, for Defendants.